WILLIAM J. McCOMBS, Plaintiff, *v.* JEREMIAH HEGARTY et al., Defendants.

City Court of the City of New York, Trial Term, Bronx County, April 19, 1954.

*Zelby & Burstein* for plaintiff.

*Caverly, Dimond, Dwyer & Lawler* for defendants.

QUINN, J. The plaintiff was the tenant of the defendants, occupying the first floor apartment in the two-family house at 1644 Edison Ave., in the north-east Bronx. The defendants lived upstairs. Their relationship of landlord and tenant had deteriorated into an unhappy association enforced upon them by the emergency rent laws, on the one hand, and by the housing shortage on the other. The landlords, restive under this yoke, had made some attempt before the Temporary State Housing Rent Comission to rid themselves of the plaintiff. These efforts culminated in failure. No doubt the landlords found their frustration galling enough without the propinquity of the tenant to remind them daily of their impotence; and no doubt the tenant found in his triumphs a warrant to subtle shows of insolence not unmixed with truculent airs.

Such was the delicately poised state of wary truce between the parties when at three o'clock in the morning of September 24, 1951, the plaintiff and his wife returned home by taxicab from a gay evening at the wedding of friends in the south Bronx. Much to their chagrin they found the common vestibule door locked, no key to open it and the occupants of their own apartment deaf to the summons of the doorbell.

The plaintiff had kept the taxicab waiting with the intention, after seeing his wife safe inside, of returning to the neighborhood of the wedding celebration he had just left, there to join a party of zealous disciples of Isaac Walton bound out on an early bird piscatorial expedition. His wife's statement that at the wedding he had "a few drinks" seems perfectly consistent with the behavior of a man who, after a night spent celebrating the nuptials of friends, would project a predawn fishing excursion as a fitting fillip to so large an evening; only it probably belongs in a collection of classical understatements. At any rate, the plaintiff rang the defendants' bell. It is not to be doubted that under the exhilaration of the "few drinks" he had had at the wedding and the pressure of a waiting cab and a waiting fishing party, his ring was imperiously loud and long with perhaps a few short, sharp breaks to point up his impatience.

It would hardly sweeten the temper of any man to be roused from sleep at 3:00 A.M. by the unaccountable, prolonged tintinnabulations of a doorbell and to come stumbling downstairs to a dark hall, in apprehension of a hundred quickly imagined calamities, only to confront a late returning reveller whose improvidence in arranging beforehand for quiet admission to

his home was the sole cause of the wee-hour alarm. It did not sweeten the temper of Jeremiah Hegarty. In fact it was the lightning stroke which curdled whatever of the milk of human kindness remained in him, undrained by the real or fancied previous machinations of his unwanted tenant.

Looks crossed like a clash of rapiers. The purpling outrage of the landlord met the foil of the tenant's supercilious *sang-froid*. High words followed. The women and children of both families, awakened by the loud voices, milled onto the stairs and into the hall. A brief, futile, inconclusive struggle, of spontaneous origin, ensued. Children shrieked. Women screamed. The combatants were parted and retired to their respective apartments. But only for the briefest of respites.

The plaintiff, dissuaded for one reason or another, from his earlier eagerness to join convivial friends in the anglers' sport, came out to dismiss the waiting taxicab. At about the same time the defendant, Jeremiah Hegarty, left his house to summon the police. The smouldering enmities which had been fanned to flame by the brief encounter were doubtless still inwardly raging when the defendant, Jeremiah Hegarty, came again upon the plaintiff, at the curb outside the house, paying off the cab. A look, a word, a random remark which found the mark of Jeremiah Hegarty's now supersensitized vulnerability to verbal barbs and the skirmish so shortly before broken off was joined again on a fuller scale. Jeremiah Hegarty felled the plaintiff and then, with the stroke which must surely have set the Marquis of Queensberry to turning over in his grave at unreckonable revolutions per minute, Jeremiah Hegarty with booted foot kicked the prostrate plaintiff in the face and jaw.

Up until the point of that kick, it well may be that the defendant had provocation, incitement and even mutuality of consent to combat to save him harmless from being cast in substantial damages to the plaintiff. But with that kick he departed so brutally and so far from the wide latitude of the unthinking use of retaliatory force in an affray not entirely of his making, that he must be judged thereupon to have embarked upon an independent course of wanton revenge with the intent to inflict unnecessary injury. (See *Dupre* v. *Maryland Management Corp.*, 283 App. Div. 701.)

In Bacon's classic stricture upon the subject: " Revenge is a kind of wild justice, which the more man's nature runs to, the more ought law to weed it out; for as for the first wrong, it doth but offend the law, but the revenge of that wrong putteth the law out of office ". (Francis Bacon, Essay IV.)

The plaintiff, from the blows he suffered at the feet of the defendant, among other things less serious, sustained a broken jaw. For the humiliation, pain, disability, suffering, discomfort, and inconvenience the plaintiff was made to endure and the special damages he incurred and by way of making the defendant Jeremiah Hegarty to smart in damages for the intolerable spirit of sheer vindictiveness which led him to take the law into his own hands, or more properly, to keep the metaphor unmixed, to set his feet in the office of the law, judgment is granted the plaintiff in the sum of $2,500.

There being no credible evidence of any participation by the defendant Elizabeth Hegarty, directly or indirectly, in any actionable assault or battery upon the plaintiff, the complaint against her is dismissed on the merits.

Enter judgment accordingly. Ten days' stay of execution and thirty days to make a case.